DUCHESNE (BROWN v.). See Cases Nos. 2,003 and 2,004.

DUCKETT (ADDISON v.). See Case No. 77.

DUCKWORTH (MINIFIE v.). See Case No. 9,633.

———

## Case No. 4,112.

### DUDEN et al. v. ARTHUR.

[24 Int. Rev. Rec. 380.]

Circuit Court, S. D. New York. Oct., 1878.

CUSTOMS DUTIES—CLASSIFICATION — COMMERCIAL DESIGNATION—YAK LACE.

[The question whether, under section 2 of the act of March 2, 1867 (14 Stat. 561), the goods known as "yak lace," which are composed entirely of worsted, are dutiable as "dress trimmings" or as "manufactures of worsted," depends upon whether they are known in commerce as "dress trimmings" or as "laces," which is a question of fact for the jury upon the testimony of merchants dealing in such goods.]

[This was an action by William Duden and others against Chester A. Arthur, collector of the port of New York, to recover duties paid under protest.]

SHIPMAN, District Judge (charging jury). Gentlemen of the Jury: In the year 1873, the plaintiffs imported into this port sundry invoices of an article commonly styled "yak lace," upon which the collector exacted a duty of 50 cents per pound and 50 per cent. ad valorem, upon the ground that the article was dress trimmings made of worsted and dutiable at the rate mentioned under the second section of the act of March 2, 1867. The plaintiffs paid the duty under protest, protesting that the goods were dutiable at 50 cents per pound and 35 per cent. ad valorem as a manufacture of worsted, and not dress trimming, under the same section of the same act which has been cited. Appeal was duly taken to the secretary of the treasury, who affirmed the decision of the collector, and in seasonable time this action was brought for the purpose of recovering the excess of duties which is claimed to have been illegally exacted.

These facts are admitted to have been substantially proven: 1st. That the article is a lace, and is exclusively made of worsted; 2nd, that it is universally bought and sold under the name of yak lace; and 3d, that its general use has been as dress and cloak trimming. though it could be, and has been, used for the trimming of parasols and of curtains. The statute provided a duty of 50 cents per pound and 50 per cent. ad valorem upon "webbings, beltings, bindings, braids, galloons, fringes, gimps, cords, cords and tassels, dress trimmings, etc., made of worsted." Upon "flannels, etc., and all manufactures of every description composed wholly or in part of worsted not otherwise provided for, valued at above 80 cents per pound, 50 cents per pound and 35 per cent. ad valorem." The plaintiffs claim that although the general use of this article has been since its first importation into this country, about the year 1872, for dress trimmings, that is commercial designation and signification among importers and wholesale dealers generally, it is not a dress trimming, but comes under the head of laces. The presumption is that the term "dress trimmings" includes all articles of worsted which are in general specially used for that particular purpose, and this presumption continues until the plaintiffs show by fair preponderance of proof, either that the term "dress trimmings" has in commercial use acquired a special and restricted meaning, or that in trade

and commerce worsted lace, or yak lace, is not a dress trimming, but is separated and set apart from the general class of dress trimmings.

The plaintiffs claim that each position is true, viz., that commercially dress trimmings do not include laces, and also that whatever dress trimmings may include, that this article of yak lace is classed among a species different from dress trimmings. A simple form of the question is, are yak laces commercially included in dress trimming, or are they known in trade as a different article from dress trimmings, and as forming part of a separate and distinct class? The reason why this question becomes material, and in this case the only question of fact is, because the classification of the articles in the tariff laws is understood to be, according to the general usages and known denominations of trade, and because as a general rule the known commercial distinctions which are made in the usages of trade are recognized in the tariff acts, unless congress has indicated in the statute that the language is used in the ordinary sense, or an intention to exclude any other classification than the one which it has specified. It is admitted that this article was not known in this country until 1872, five years after the passage of the act of 1867; hence your duty is to inquire whether the article has been in this country, among importers and large dealers generally, commercially known as not a dress trimming, or has been a separate and distinct class since the period of its introduction to the markets of this country.

Upon this question the plaintiffs, who are obliged to take the burden of proof and to make out their case by a fair preponderance of testimony, introduce many witnesses, all well known in the commercial world or representing well known commercial houses. The testimony of these gentlemen tends to prove upon the disputed point: 1st. That dress trimmings are commercially confined to a class of goods like galloons, fringes, gimps and buttons, which have been universally recognized as ladies' dress ornaments, and that articles which occasionally are used for that purpose by the dictates of fashion as laces, ribbons or detachable pieces of velvet or silk are not recognized as belonging to the class of dress trimmings. 2nd. That laces have uniformly formed a class of goods of their own, because laces are used for a great variety of purposes, and that this new article of yak lace, although used generally for dress trimmings, has been included in the class of lace and has been kept for sale in the department of laces by merchants who had in their store both a lace and a dress-trimming department.

The defendant introduces a number of witnesses who are mostly importers or dealers in dress trimmings, and their testimony is substantially to the effect: 1st. That they being dealers in dress trimmings, keep on hand, buy and sell this article because it is a dress trimming. 2nd. That anything is commercially regarded as a dress trimming, which for the time being is used as a dress trimming, and that there is no distinctive commercial definition of the term other than its general meaning.

This being the general character of the testimony on both sides, I have to suggest that the mere name of the article yak lace is not material except in connection with the fact that it is lace, and the position of the plaintiffs is that all laces are a separate article commercially from dress trimmings, so that the question between the parties may be succinctly stated as follows: Are or are not worsted laces commercially dress trimmings? The important point in the plaintiffs' testimony is that yak lace is commercially not regarded as a dress trimming, because it is kept and catalogued in mercantile houses which have separate departments of laces and dress trimmings, among the laces. I think that the uncontradicted evidence, establishes this fact, viz., that firms which keep separate departments of laces and dress trimmings catalogue yak laces among the laces and keep them in the lace department. This being a fact, and relied upon by the plaintiffs as an important one, it becomes material to ascertain what it proves. Does it indicate to your minds merely that this is done for convenience' sake because yak lace is a lace, and therefore conveniently placed among the other varieties of laces, or does it go further and show that dress trimmings are in commercial understanding confined to the articles which have been well understood for many years to be dress trimmings, such as gimps and fringes and galloons? If the former is the reason why this classification is made, then this evidence becomes not of great weight. If the evidence points to the latter conclusion it is of high importance. The principle of commercial designation, to wit, that terms in the tariff acts are, as a general rule, unless it appears that the terms are used in the general signification, to be understood according to their meaning among merchants, and that testimony is to be introduced to show and satisfy the trier what the mercantile community mean and understand by a particular word or term is a just and sensible principle which has been recognized by courts for many years. The government has often invoked it to the benefit of the treasury, the importer has often made use of it to his advantage. It is a principle of the law. Thus crape veils do not come within the designation of silk veils, because although made of silk, they are not called silk veils, and are not in commercial phrase silk veils, but are a class of their own.

Whenever this question arises and the affirmative is supported by substantial evidence it necessarily becomes a question of fact for the jury. Juries should see to it that the principle is not abused. That importers

should not by mere names and phrases, or by an arrangement in their business merely for convenience withdraw an article from the place to which the statute has assigned it; but when the principle is applicable and the jury find that importers have uniformly affixed a particular commercial meaning to a particular word in the tariff acts, then the commercial meaning is to control. If then you find that yak lace has not been since its importation in the year 1872 by importers and wholesale dealers generally in this country included within the term "dress trimmings" as that term is used in trade and commerce, and therefore is commercially not a dress trimming, but is included in a separate class, your verdict will be for the plaintiffs, otherwise your verdict will be for the defendant.